## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

**BARBARA ZIMLICH,**

      Plaintiff,

**v.**                         Case No.: **3:13-cv-205-J-25JRK**

**LENDER PROCESSING SERVICES INC.,** *et al.,*

      Defendants.

_____/

## <u>ORDER</u>

**THIS CAUSE** is before the Court on Defendants' Motion to Dismiss with Prejudice (Dkt. 21) and Plaintiff's Response in Opposition thereto (Dkt. 26). Upon consideration, the Court finds as follows:

### I.   Background

This action arises out of Plaintiff's attempts to recover losses to the Lender Processing Services Employee Retirement Plan ("Plan") sustained by the Plan in connection with the Plan's purchases, offering and holding of Lender Processing Services ("LPS") common stock and or the LPS Stock Fund.

1

On February 26, 2013, Plaintiff filed her Complaint (Dkt.1) commencing this case. The Complaint contains three (3) counts alleging violations of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001 et seq. (ERISA). Specifically, Count I is a claim for the alleged breach of ERISA's duty of prudence; Count II is a claim for the alleged breach of ERISA's duty of loyalty; and, Count III is a claim for the alleged breach of ERISA's duty to inform and monitor appointed fiduciaries.

On April 18, 2013, this Court issued an Order (Dkt. 18) dismissing the Lender Processing Services, Inc. Group Plans Committee as a party to this action. On April 30, 2013, Defendants filed their Motion to Dismiss Complaint (Dkt. 21). On May 31, 2013, Plaintiff filed her Response in Opposition (Dkt. 26). Additionally, both Plaintiff and Defendants have filed supplemental authority to support their arguments. *See* (Dkts. 29, 30).

## II.   Standard of Review

In order to state a claim, Fed. R. Civ. P. 8(a) requires a short and plain statement of the claim showing that the pleader is entitled to relief. While the Rules of Civil Procedure do not require a Plaintiff to set forth all the facts upon which the claim is based, the complaint must give the Defendant fair notice of what the claim is and the grounds upon which it

2

rests. *See Harris v. Procter & Gamble Cellulose Co.*, 73 F.3d 321, 324 (11th Cir. 1996). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007). The facts set forth in the complaint must be accepted as true and construed in a light favorable to Plaintiffs. *Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983).

Thus, "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (internal citations omitted).[1] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Moreover, "[o]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950.

The complaint's allegations must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678. "Threadbare

---

[1]Many internal citations have been omitted throughout this Order.

recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Thus, when considering motions to dismiss, the Court must "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010).

## III.   Analysis

### Rule 12(b)(1) Jurisdictional Limitation[1]

Defendant argues that Plaintiff lacks standing to assert a claim on behalf of the class of Plan members subsequent to July 20, 2010 and Plaintiff's claims should be dismissed pursuant to Rule 12(b)(1). Plaintiff argues that she has standing for the stated "relevant period" in her Claim and does not contest that this period ends on July 20, 2010.

A Plan participant has standing to assert claims for the period of their participation in the Plan. *Piazza v. Ebsco Industries, Inc.*, 273 F.3d 1341, 1350-51 (11 Cir. 2001). The Court may "examine the record as a whole to determine whether we are empowered to adjudicate the matter at hand."

---

[1] The Court declines addressing whether, Plaintiff has met the additional requirements for class certification.

4

*Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1242 (11th Cir. 2003); *Elend v. Basham*, 471 F.3 1199, 1208 (11th Cir. 2006).

Plaintiff's interpretation of the decisions in *Piazza, Larue and Landfear* are misplaced.  Specifically, a former plan participant can assert a claim for a breach of fiduciary duty for benefits measured by the difference between what the retirement account was worth when the employee cashed it out and what it would have been worth had it not been for the breach of fiduciary duty.  *See La Rue v. DeWolff, Boberg & Associates, Inc.*, 552 U.S. 248 (2008) citing *Harzewski v. Guidant Corp., 489 F.3d 799* (7th Cir. 2007); *Lanfear v. Home Depot, Inc.*, 536 F.3d 1217 (11th Cir. 2008);  *Piazza*, 273 F.3d 1341.  Additionally, ERISA defines in part the term "participant" with reference to entitlement to benefits as: "any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan...." 29 U.S.C. § 1002(7).

Upon review of the record, it is clear that Plaintiff cashed out and ceased participating in the Plan after receipt of her account distribution on July 19, 2010 and did not maintain eligibility to receive any further benefit of any type from the benefit plan beyond July 20, 2010.  Therefore, although

5

dismissal is improper on these grounds, Plaintiff's standing does not extend beyond this date.  *Piazza*, 273 F.3d at 1350-51; *Lanfear v. Home Depot, Inc.*, 536 F.3d at 1222 (11th Cir. 2008).  As such the "Relevant Time Period" of Plaintiff's claims extends from December 31, 2009 until July 20, 2010.

### Count I[2]

Plaintiff alleges that from December 31, 2009 to the present, Defendants breached their fiduciary duty of prudence because they knew or should have known that the LPS Stock Fund was not a suitable and appropriate investment; therefore, Defendants should not have continued to allow the Plan to hold or offer LPS stock as an investment option (Dkt. 1-1, pgs. 62-64).  Plaintiff specifically alleges a pattern of unlawful conduct in LPS's core business that was widely publicized rendered the LPS Stock Fund unsuitable for investment.  Additionally, Plaintiff argues that: (1) Defendants had unfettered discretion not to offer LPS stock; (2) the Plan is

---

[2] Pursuant to Federal Rule of Evidence 201(b), the Court takes judicial notice of LPS's stock price beginning on June 24, 2008, when it was first listed.  As these prices are not subject to reasonable dispute, they are a proper subject for judicial notice.  *La Grasta v. First Union Securities, Inc.*, 358 F.3d 840, 842 (11th Cir. 2004).

not an Employee Stock Ownership Plan ("ESOP");[3] (3) the Plan does not contain language that encourages or mandates that the LPS Stock Fund is offered; and (4) no presumption of prudence applies because the Plan fiduciaries were not directed or encouraged to offer LPS stock. Alternatively, Plaintiff argues that the allegations in her Complaint are sufficient to overcome a presumption of prudence.

Defendants argue that : (1) Under ERISA § 407(d)(3), 29 U.S.C. § 1107(d)(3), the Plan is an Eligible Individual Account Plan (EIAP), which includes an ESOP that holds the Plan's LPS stock pursuant to § 407(d)(6)(A), 29 U.S.C. § 1107(d)(6)(A); (2) the ESOP is designed to invest primarily in shares of Company Stock; (3) throughout the relevant time period, LPS's stock valuations remained favorable to financial experts: (4) Defendants' continuance to allow the Plan to offer and hold LPS Stock was prudent as LPS's stock price followed the movements of the market; (5) based on the Plan's language and Defendants adherence to the Plan's instructions entitles them to a presumption of prudence wherein the Court will review Defendants' actions for an abuse of discretion; (6) application of

---

[3]An Eligible Individual Account Plan ("EIAP") that encourages or requires investment in employer stock also provides a presumption of prudence for fiduciaries.  *See Lanfear v. Home Depot, Inc.,* 679 F.3d 1267, *14 (11th Cir. 2012).

the presumption causes Count I to fail as a matter of law; (7) Plaintiff's allegation that LPS's wrongdoing caused the decline in the price of LPS stock does not alter the analysis; and (8) Plaintiff failed to allege that LPS 's long term viability was altered or at risk.

A presumption of prudence applies where a Plan fiduciary is required or encouraged to invest in employer securities. *Lanfear v. Home Depot, Inc.*, 679 F.3d 1267, 1279 (11th Cir. 2012)(internal citations omitted). The presumption is a standard of review applied to a decision made by an ERISA fiduciary and it applies at the motion to dismiss stage. *Id.* at 1281. A Plaintiff does not have to allege that the company was on the "brink of a financial collapse" to overcome the presumption of prudence. *Id.* at 1280. Instead, a plaintiff must "show that the ERISA fiduciary could not have believed reasonably that continued adherence to the ESOP's direction was in keeping with the settlor's expectations of how a prudent trustee would operate." *Id.*

"Mere stock fluctuations, even those that trend downward significantly, are insufficient to establish" that a fiduciary abused its discretion by continuing to invest in or hold employer securities in compliance with the terms of the plan. *Lanfear*, 679 F.3d at 1282 (11th Cir. 2012)(internal citations omitted). "Settlor directions in retirement

plans...are usually designed for the long haul." *Id.* Moreover, absent Plan language specifically directing Plan fiduciaries to disregard their instructions based on short-term events and fluctuations, Plan fiduciaries should not utilize market timing as a pension fund investment strategy. *Id.*

The Court undertakes a reading of the Plan such as to provide effectiveness of the Plan as a whole, thereby achieving the goals of the settlors. Therefore, the Court reconciles Plan articles that may at first glance appear to be in conflict. Plaintiff's self-serving interpretation of the Plan's language is egregiously misplaced and not well taken.

Plaintiff concentrates her argument that the Plan language is permissive by selectively quoting Plan §§ 2:30, 4.3, 4.5 and 4:6. Moreover, Plaintiff's belief that Plan §§ 18.1 and 18.2 are dependent on the fiduciaries' unfettered discretion to offer Company stock is misplaced. In fact, Article XVIII of the Plan contains the very language Plaintiff argues the Plan lacks. Specifically, § 18.1 of the Plan states that "[t]he ESOP Allocations for all Participants shall be considered and designated as an employee stock ownership plan (collectively referred to as the "ESOP")." (Plan, Dkt. 21-2, p. 71). Additionally, § 18.2 of the Plan states in part:

> "A principal purpose of the ESOP is to provide an avenue
> for Employees to acquire Company Stock. Accordingly,
> contributions made to the ESOP in cash and other cash
> received for the ESOP by the Trustee shall be invested

> primarily or exclusively in Company Stock.  Purchases of
> Company Stock may be made in the open market.... If
> Company Stock is not available for purchase, or if the
> Trustee determines that the purchase of additional
> Company Stock is not prudent or would not further the
> purposes of the Plan, the Trustee shall to the extent not
> inconsistent with the Plan's continued tax qualification as
> an employee stock ownership plan under Code Section
> 4975(e)(7), invest the assets of the ESOP in securities or
> investments other than Company Stock."

Plan § 18.2  (Plan, Dkt. 21-2, p. 71).  Upon a thorough reading of the Plan,

the Court finds that the Plan is an ESOP and the Plan at least encourages

Plan fiduciaries to offer the LPS Stock Fund.  In fact, absent LPS stock not

being available for purchase or a prudent investment choice, the Plan

requires that the LPS Stock Fund remain an option under the Plan.  In sum,

Plaintiff's self-serving interpretation of the Plan's language does not allow

the Plan to achieve the settlors' objectives.  Consequently, Defendant

fiduciaries are entitled to a presumption of prudence.  *Lanfear*, 679 F.3d at

1279 (11th Cir. 2012).

Plaintiff's Complaint details several news articles, legal Opinions and

reports discussing the government investigation into LPS and its

subsidiaries.  Plaintiff utilizes these reports to evidence that the Plan

fiduciaries should have known that the LPS Stock Fund was no longer a

suitable and appropriate investment during the relevant time period.

However, if Defendants had reacted to the initial April 17, 2009 news of the

10

government's investigation and determined that the LPS Stock Fund was no longer a prudent investment, the Plan participants would have missed the subsequent increase from $28.89 per share to $40.66 that occurred between April 17, 2009 and December 31, 2009.[4]  Similarly, news reports likely caused the stock to decline between April of 2011 and January of 2012.[5]  However, like before, the stock rebounded substantially. Importantly, Plaintiff has failed to allege that LPS sustained a material change in its customer base, long-term viability, assets or operational structure as to allow the Court to determine that the information available to the fiduciaries would cause them to reasonably believe that LPS would suffer long-term effects; thus, making the continued offering of the LPS Stock Fund imprudent.  *See Lanfear*, 679 F.3d 1267.

Defendants were not required to depart from the Plan's directives even if they were aware that the stock price would likely fall.  *Lanfear*, 679 F.3d 1267, 1282.  The downward stock fluctuation cited by Plaintiff is insufficient to establish that the Defendants abused their discretion by

---

[4] The Court notes LPS stock was $33.18 on April 16, 2009, decreased to $28.89 on April 17, 2009, after news of the investigation was released, and in spite of the investigation, subsequently soared to $43.99 per share on October 23, 2009.

[5] For the sake of being thorough, the Court has examined LPS stock's behavior through the relevant time period asserted by Plaintiff.

continuing to invest or hold the employer securities in compliance with the terms of the plan. *Id.* "Even accepting all of the allegations in the complaint as true and viewing all of the facts in the light most favorable to the plaintiffs, the defendants could have reasonably believed that the Plan's settlors would have intended that their instructions be followed in the circumstances involved in this case." *Id.* Because Plaintiff has not plead facts establishing that Defendants abused their discretion by following the Plan's directions, Plaintiff has failed to state a valid claim for breach of the duty of Prudence.[6] *See Id.*

### Count II

In regards to Count II, Defendant argues that Plaintiff failed to exhaust her administrative remedies and abandoned this claim during the administrative process. Here, "Plaintiff concedes that her claim for failure to adequately inform Plan participants about the true nature and the true risk and return characteristics of LPS stock should be dismissed in light of *Lanfear II*, 679 F.3d at 1284-86." (Dkt. 26, *6, p. 10).

---

[6] The Court also analyzed this claim through the current date, in the event Plaintiff's claim accrued beyond her participation in the Plan and reached the same result.

The Court agrees.  In *Lanfear*, the Eleventh Circuit explained that

"ERISA does not explicitly impose a duty to provide participants with

nonpublic information affecting the value of a company's stock."  *Lanfear v.*

*Home Depot, Inc.*, 679 F.3d at 1284 (11th Cir. 2012).  Similar to *Lanfear*,

the summary plan description sent to all of the Plan participants contains

statements about the risk that participants faced from investing in the

Common Stock Fund.  Specifically, the Plan states in part:

> "[n]either the Company, its officers, directors, Employees
> or shareholders, nor any fiduciary of the Plan shall have
> any responsibility for the value of any stock or other
> securities of the Company allocated to the Account of, or
> distributed to, any Participant or Beneficiary hereunder; it
> being understood that such stock or securities may
> decline in value or become wholly worthless due to risks
> and circumstances which cannot be foreseen and which
> may not be within the control of any such person or
> entities."

(L.P.S. Profit Sharing Plan, Employee Stock Ownership Plan Provisions

Article XVIII, Dkt. 21-2, p. 71).  Further, Defendants' were not acting as

plan fiduciaries when they submitted their mandated corporate SEC filings.

*Lanfear*, 679 F.3d 1267 (11th Cir. 2012).

Plaintiffs in ERISA actions must exhaust available administrative

remedies before suing in federal court.  *Counts v. Am. Gen. Life & Accident*

*Ins. Co.*, 111 F.3d 105, 108 (11th Cir.1997)); *see also Kahane v. UNUM*

*Life Ins. Co. of Am.*, 563 F.3d 1210, 1214 (11th Cir.2009); *Lanfear v. Home*

13

*Depot, Inc.*, 536 F.3d 1217, 1223–24 (11th Cir.2008); *Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1328 (11th Cir.2006).  Here, Plaintiff failed to exhaust her administrative remedies.  Article 13.2 of the Plan requires that an appeal be made in writing within sixty (60) days after the date of notice that a claim has been denied.

Here, Plaintiff specifically chose not to appeal the denial of her non-disclosure claim (Dkt. 21-5, p. 14).  Additionally, the deadline to administratively appeal this claim has passed; therefore, Plaintiff has abandoned this claim and dismissal is proper.

### Count III

In Count III, Plaintiff argues that the Defendant Directors failed to adequately inform the Plan Committee Defendants about the company's business problems; thus, they were unable to determine that company stock was an imprudent investment.  Consequently, the monitored fiduciaries were not provided with the information necessary for them to performing their duties of overseeing the Plan's investments.

Defendant argues that Plaintiff's monitoring claim fails as a matter of law because the appointed fiduciaries acted prudently; therefore, the fiduciaries that appointed them cannot be liable for failure to inform and monitor.  Specifically, Count III is a derivative claim that fails without an

14

adequately plead underlying claim.  Additionally, Defendants argue that at best, Plaintiff's allegation is that the Director Defendants failed to provide the Plan Committee Defendants information that was public knowledge and already known by the Plan Committee Defendants.

A Plaintiff "cannot state a claim for breach of the duty to monitor without adequate allegations that the party being monitored acted inappropriately." *Smith v. Williams*, 819 F.Supp.2d 1264, 1283 (M.D. Fla. 2011).  Moreover, a Plaintiff must "first state a claim for imprudence by one fiduciary before stating a claim for co-fiduciary liability." *Id.*

Similar to the plaintiffs in *Smith,* Plaintiff alleges that the Director Defendants failed in their obligation to monitor by: (1) failing to disclose adequate information about the company's business problems; (2) failing to prevent the Plan fiduciaries from offering the company stock as an investment alternative for the Plan; and (3) failed to take action to protect the plan.  Additionally, Plaintiff similarly alleges that Director Defendants are liable as co-fiduciaries.  As Plaintiff has failed to state a claim for imprudence by a Plan fiduciary, all of Plaintiff's Count III claims must fail. *Smith*, 819 F.Supp.2d 1264, 1283 (M.D. Fla. 2011).

Accordingly, it is **ORDERED**:

1.    Defendants' Motion to Dismiss (Dkt. 21) is **GRANTED**.

2.    The Clerk is directed to enter judgment in favor of the

Defendants and against the Plaintiff BARBARA ZIMLICH and to close this

case.

**DONE AND ORDERED** this ___7th___ day of ___January___, 2014.

HENRY LEE ADAMS, JR.
United States District Judge

Copies to:  Counsel of Record

16